# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE
-----------------------------------------------------------------X
MARY CATHERINE VAN BORTEL, a/k/a KITTY
VAN BORTEL, and HOWARD G. VAN BORTEL,

                       Plaintiffs,

      -against-

FORD MOTOR COMPANY,

                       Defendant.
-----------------------------------------------------------------X

Index No.: E2021/10285

**AMENDED COMPLAINT**

        Plaintiffs, Mary Catherine Van Bortel, a/k/a Kitty Van Bortel, and Howard G. Van Bortel (hereinafter collectively referred to as the "Plaintiffs"), complaining of the defendant, set forth and allege, upon information and belief, as follows:

## THE PARTIES

        1.     Plaintiff Mary Catherine Van Bortel, a/k/a Kitty Van Bortel ("Van Bortel"), is an individual residing in the State of New York.

        2.     Plaintiff Howard Van Bortel is an individual residing in the State of New York.

        3.     Plaintiffs own and operate several automobile dealerships in the New York area, including Van Bortel Ford ("Van Bortel Ford"), which is, and at all relevant times hereinafter mentioned was, a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York, with offices at 71 Marsh Road, East Rochester, New York 14445, where it maintained its principal place of business.

        4.     Defendant Ford Motor Company ("Ford" or "Defendant") is, and at all relevant times hereinafter mentioned was, a foreign corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with offices at 1 American Road, Dearborn, Michigan, 48126, where it maintains its principal place of business.

## BACKGROUND

5. Van Bortel is a female automobile dealer who has owned and operated a franchised Ford dealership in the Rochester, New York area for the past twenty (20) years.

6. During that time, Van Bortel Ford has consistently had the highest sales performance and customer service scores in the market area.

7. Van Bortel Ford has been the #1 selling Ford dealer in the market area every year for the last twenty (20) years.

8. Further, Van Bortel has been the recipient of the Ford President's Award for each of the past ten (10) years and received the prestigious National Time Dealer of the Year Award, in addition to the Ford Salute to Dealer's Award, the ONE Ford Elite Award, the Automotive News 100 Leading Women in North America Award, and the Rochester ATHENA Award.

9. On or about September 8, 2021, Ford area representative Paul Bucek ("Bucek") contacted Van Bortel and informed her that the Henderson Ford dealership, located in Webster, New York, was being sold, subject to Ford's right of first refusal.

10. Bucek, on behalf of Ford, further promised, offered and represented to Van Bortel that, if Plaintiffs were interested in purchasing the Henderson Ford dealership, Ford would exercise its right of first refusal and assign the Purchase and Sale Agreement ("PSA") to Plaintiffs. On behalf of Plaintiffs, Van Bortel accepted and agreed to Ford's offer, promise and representations concerning the assignment of the PSA (the "First Ford Agreement").

11. Both Van Bortel Ford and Henderson Ford are located on the east side of Rochester, New York.

12. The Henderson Ford dealership is located only seven (7) miles north of Van Bortel Ford's dealership.

13. Moreover, Van Bortel Ford has approximately 3,000 customers within Henderson Ford's territory.

14. As such, Plaintiffs, in reliance on Ford's offer, promise and representations, which were accepted and agreed to by Van Bortel on behalf of Plaintiffs (i.e., the First Ford Agreement), entered into a nondisclosure agreement with Ford.

15. On or about September 17, 2021, Bucek and Ford representative, Brennen Murray ("Murray"), called Van Bortel and, in breach of the First Ford Agreement, informed her that Ford had decided not to approve the Henderson Ford PSA and, therefore, could not assign the PSA to Plaintiffs.

16. Notwithstanding Ford's breach of the First Ford Agreement, during the September 17, 2021 telephone call, Van Bortel reiterated Plaintiffs' interest in purchasing the Henderson Ford dealership and proposed the following offer to Ford - in the event that another approvable Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs.

17. Bucek, on behalf of Ford, accepted this offer and verbally promised and represented to Van Bortel that, if another approvable Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs (the "Second Ford Agreement").

18. On October 25, 2021, Bucek informed Van Bortel that Henderson Ford had entered into a PSA with another Ford dealer, West-Herr.

19. Notwithstanding the First Ford Agreement and the Second Ford Agreement (collectively, the "Agreements") entered into between Ford and Plaintiffs, Bucek informed Van

Bortel that, in breach of the Agreements, Ford would not be exercising its right of first refusal and would not assign the PSA to Plaintiffs.

20. Upon information and belief, West-Herr currently owns a Ford dealership in the Rochester area, but it is located on the west side of Rochester.

21. Upon information and belief, West-Herr is owned and operated by a male dealer.

22. On or about October 27, 2021, Van Bortel spoke with Ford's Retail Network U.S. Franchise Manager, Edie Lukas, regarding the Agreements. In the course of their conversation, Van Bortel explained how she had fought to establish herself as a successful female Ford dealer. In response, Lukas stated that "minority dealers are not a priority right now" for Ford.

23. Plaintiffs are ready, willing and able to proceed with the purchase of the Henderson Ford dealership on the same terms agreed to in the West-Herr PSA.

24. Plaintiffs are clearly the most qualified candidate to purchase the Henderson Ford dealership.

25. Van Bortel has repeatedly demanded that Ford honor the Agreements by exercising its right of first refusal and assigning the PSA to Plaintiffs.

26. To date, Ford has failed and/or refused to abide by the clear and unambiguous terms of the parties' Agreements.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF ALL PLAINTIFFS
### (BREACH OF CONTRACT)

27. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "26" above, as if set forth at length herein.

28. The Agreements constitute valid and enforceable contracts.

29. Defendant Ford has materially breached the Agreements.

30. Defendant Ford materially breached the Agreements by, inter alia, failing and/or refusing, on two different occasions, to exercise its right of first refusal and assign the PSAs to Plaintiffs.

31. As a result of Defendant Ford's breaches of the Agreements, Plaintiffs have been damaged.

32. Based on the foregoing, Plaintiffs are entitled to judgment against defendant Ford for damages in an amount to be determined at the trial of this action, plus interest at the greatest extent permitted by law, costs, disbursements and attorneys' fees.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF VAN BORTEL (VIOLATION OF NEW YORK STATE EXECUTIVE LAW § 296(5)(B))

33. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "32" above, as if set forth at length herein.

34. Van Bortel is a female automobile dealer who has owned and operated a franchised Ford dealership in the Rochester, New York area for the past twenty (20) years.

35. Van Bortel, a female, falls within a protected class of individuals under New York State Executive Law § 296 *et seq.*

36. Van Bortel's history with Ford began in 2001, when she was approached by a Ford area representative and solicited to purchase the Victor, New York dealership.

37. In 2009, based upon Van Bortel's solid performance, she was again approached by a Ford area representative with an offer to purchase the Fairport, New York dealership.

38. Making a success of the first two purchases, Van Bortel went on to purchase the Macedon Ford dealership and to establish her current mega location in East Rochester.

39. In East Rochester, Van Bortel Ford has consistently had the highest sales performance and customer service scores in the market.

40. Van Bortel Ford has been the #1 selling Ford dealer in the market area every year for the last twenty (20) years.

41. Further, Van Bortel has been the recipient of the Ford President's Award for each of the past ten (10) years and has also received the prestigious National Time Dealer of the Year Award, in addition to the Ford Salute to Dealer's Award, the ONE Ford Elite Award, the Automotive News 100 Leading Women in North America Award, and the Rochester ATHENA Award.

42. New York's Executive Law § 292(13) defines "commercial space" as:

"any space in a building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied for the manufacture, sale, resale, processing, reprocessing, displaying, storing, handling, garaging or distribution of personal property; and any space which is used or occupied, or is intended, arranged or designed to be used or occupied as a separate business or professional unit or office in any building, structure or portion thereof.

43. New York's Executive Law § 296(5)(b) makes it:

"an unlawful discriminatory practice for the owner, lessee, sub-lessee, or managing agent of, or other person having the right of ownership or possession of or the right to sell, rent or lease, land or commercial space:

(1) To refuse to sell, rent, lease or otherwise deny to or withhold from any person or group of persons land or commercial space because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, age, disability, marital status, or familial status of such person or persons, or to represent that any housing accommodation or land is not available for inspection, sale, rental or lease when in fact it is so available;

(2) To discriminate against any person because of race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, age, disability, marital status, or familial status in the terms, conditions or privileges of the sale, rental or lease of any such land or commercial space; or in the furnishing of facilities or services in connection therewith"

44. Ford has engaged in conduct, as alleged herein, that constitutes unlawful discriminatory practices and unlawful discrimination on the basis of Van Bortel's gender, in violation of the New York State Executive Law.

45. Ford subjected Van Bortel to adverse action on account of her protected status.

46. Ford, pursuant to its dealer sales and services agreement with Henderson Ford had the right to exercise a right of first refusal with respect to any sale of Henderson Ford.

47. Upon information and belief, the PSA with respect to both the First Ford Agreement and the Second Ford Agreement concerned not only the sale of the Henderson Ford Dealership, but also the right to purchase, rent or lease, land or commercial space.

48. As such, Ford was a "person," pursuant to New York Executive Law § 295(5)(b), which had the "right of ownership or possession of or the right to sell, rent or lease, land or commercial space."

49. Defendant Ford wrongfully and illegally discriminated against Van Bortel based upon her gender by, inter alia, intentionally failing and/or refusing, on two separate occasions (despite its promises otherwise), to exercise its right of first refusal and assign the PSAs (along with the right to purchase, rent or lease, land or commercial space) to Van Bortel and, instead, purposely and intentionally permitted a male to purchase Henderson Ford.

50. Upon information and belief, Ford, in furtherance of its efforts to discriminate against Van Bortel on the basis of her gender, "rushed" the approval and finalization of the sale of Henderson Ford to West-Herr.

51. Upon information and belief, at Ford's instruction and with Ford's approval, consent, knowledge and acquiescence, it only took slightly over thirty (30) days from contract for West-Herr to close on its purchase of Henderson Ford while, in the usual course, it takes

approximately one hundred twenty (120) days from contract to close on the sale of an franchised automobile dealership.

52. The foregoing conduct constitutes wrongful, illegal and intentional gender discrimination, which is prohibited by New York Executive Law § 296 *et seq*.

53. Based on the foregoing, Plaintiff Van Bortel is entitled to judgment against defendant Ford for damages in an amount to be determined at the trial of this action, plus interest at the greatest extent permitted by law, costs, disbursements and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### INJUNCTIVE RELIEF

54. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs "1" through "53" above, as if set forth at length herein.

55. In the event that Ford refuses to exercise its right of first refusal and assign the Henderson Ford PSA to Plaintiffs, it will result in substantial losses to the Plaintiffs.

56. In the event that Ford refuses to exercise its right of first refusal and assign the Henderson Ford PSA to Plaintiffs, Plaintiffs will suffer irreparable injury.

57. Plaintiffs have no adequate remedy at law.

58. By reason of the foregoing, the Plaintiffs are entitled to a permanent injunction enjoining defendant Ford from issuing any approval of the Henderson Ford PSA.

WHEREFORE, as a result of the foregoing, Plaintiffs' demand judgment as follows:

(a) On the First Cause of Action: Plaintiffs are entitled to judgment against defendant Ford for damages in an amount to be determined at the trial of this action, plus interest at the greatest extent permitted by law, costs, disbursements and attorneys' fees;

(b) On the Second Cause of Action: Van Bortel is entitled to judgment against defendant Ford for damages in an amount to be determined at the trial of this action, plus interest at the greatest extent permitted by law, costs, disbursements and attorneys' fees;

(c) On the Third Cause of Action: Plaintiffs are entitled to a permanent injunction enjoining defendant Ford from issuing any approval of the Henderson Ford PSA;

(d) Awarding the Plaintiffs, the costs, attorney's fees and disbursements incurred in this action; and

(e) Awarding Plaintiffs such other and further relief as may be deemed just and proper.

Dated: Mineola, New York
December 7, 2021

BELLAVIA BLATT, P.C.

By: *Leonard Bellavia*
LEONARD A. BELLAVIA
*Attorneys for Plaintiffs*
200 Old Country Road, Suite 400
Mineola, NY 11501
(516) 873-3000