UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARY CATHERINE VAN BORTEL a/k/a KITTY
VAN BORTEL, and HOWARD G. VAN
 BORTEL,

                            Plaintiffs,                Index No. 21-cv-6739 (DGL)

    -against-

FORD MOTOR COMPANY,

                            Defendant.
-------------------------------------------------------------------X


### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINT


BELLAVIA BLATT, P.C.
*Attorneys for Plaintiffs*
*Mary Catherine Van Bortel, a/k/a Kitty Van Bortel,*
*and Howard G. Van Bortel*
200 Old Country Road, Suite 400
Mineola, New York 11501

Of Counsel:
    Steven H. Blatt, Esq.
    Thomas A. Bizzaro, Jr., Esq.
    Diana DiLeonardo, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...............................................................................1

STATEMENT OF FACTS.....................................................................................1

LEGAL STANDARD REVIEW..............................................................................5

ARGUMENT........................................................................................................6

    POINT I – PLAINTIFFS HAVE STATED A VALID CLAIM FOR BREACH OF AN ORAL CONTRACT.............................................................................6

        A.  PLAINTIFFS HAVE ADEQUATLY PLED THE EXISTENCE OF AN ACTUAL CONTRACT...........................................................6

        B.  SHOULD THE COURT FIND THAT PLAINTIFFS HAVE NOT ADEQUATELY PLED THE EXISTENCE OF AN ACTUAL CONTRACT, PLAINTIFFS SHOULD BE PERMITTED TO AMEND THEIR PLEADING.............................................................................12

        C.  THE ALLEGED AGREEMENT DOES NOT VIOLATE THE STATUTE OF FRAUDS.............................................................................16

    POINT II – PLAINTIFFS HAVE STATED A VALID CLAIM FOR GENDER DISCRIMINATION UNDER NEW YORK EXECUTIVE LAW § 296(5)(B)........... 19

CONCLUSION....................................................................................25

## TABLE OF AUTHORITIES

### Cases

**State**

*D&N Boening v. Kirsch Beverages*, 63 N.Y. 2d 449 (1984)……………………………………...17

*North Shore Bottling Co. v. Schmidt & Sons*, 22 N.Y. 2d 171 (1968)………………...............17

*Rosenbaum v. Premier Sydell, Ltd.*, 240 A.D.2d 556 (2d Dep't 1997)………………………….6

*Saul v. Cahan*, 153 A.D.3d 947 (2d Dep't 2017)………………………………………………….6

**Federal**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………………5

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985)……...............5

*Brodie v. New York City Transit Auth.*, 2000 U.S. Dist. LEXIS 6144 (S.D.N.Y. May 5, 2000)..14

*Capax Discovery, Inc. v. AEP RSD Inv'rs*, 285 F. Supp 3d 579 (W.D.N.Y. 2018)……………..18

*Conley v. Gibson*, 355 U.S. 41 (1957)………...………………………………………………...5

*DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333 (S.D.N.Y. 2009)...…………………………20, 25

*Foman v. Davis*, 371 U.S. 178 (1962)……………………………………………………............14

*Fort Prods. V. Men's Med. Clinic, LLC*, 2016 U.S. Dist. LEXIS 22399 (S.D.N.Y. 2016)……...11

*Goldman v. Belden*, 754 2d 1059 (2d Cir. 1985)…………………………………………………....5

*Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp.2d 228 (S.D.N.Y. 1999)…………...16

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249 (1989)……………………………...14

*Holland v. Goord*, 2006 U.S. Dist. LEXIS 47537 (W.D.N.Y. 2006)…………………………….13

*JP Morgan Chase Bank, N.A. v. Maurer*, 2015 U.S. Dist. LEXIS 98870 (S.D.N.Y. 2015)…….16

*Johnson v. City of New York*, 2018 U.S. Dist. LEXIS 1046 (E.D.N.Y. Jan. 3, 2018)…………...18

*Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131 (2d Cir. 2011)…………………………………...6

*Kaster v. Modification Sys., Inc.*, 731 F.2d 1014 (2d Cir. 1984)…………………………………13

*Kunica v. St. Jean Fin.*, 1998 U.S. Dist. LEXIS 11867 (S.D.N.Y. 1998)………………………10

*Lanier v. Bats Exch., Inc.*, 838 F.3d 139 (2d Cir. 2016)………………………………………….5

*Levy v. Lucent Techs.*, 2003 U.S. Dist. LEXIS 414 (S.D.N.Y. 2003)…………………………...16

*Lucy v. Amoco Oil Co.*, 582 F. Supp. 1168 (E.D. Mich. 1984)………………………………….21

*New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions,*
235 F. Supp. 2d 123 (N.D.N.Y. 2002)..................................................................6

*Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252-53 (2d Cir.1991)...................................13

*Oberstein v. SunPower Corp.,* 2010 U.S. Dist. LEXIS 41402 (E.D.N.Y. Apr.28, 2010)............6

*Puchalski v. FM Constr. Inc.,* 2020 U.S. Dist. LEXIS 213959 (S.D.N.Y. 2020)....................11

*Riccuiti v. N.Y.C. Transit Auth.,* 941 F.2d 119 (2d Cir. 1991).......................................14

*Ronzani v. Sanofi S.A.,* 899 F.2d 195 (2d Cir. 1990)..................................................13

*Vacold v. Cerami,* 2002 U.S. Dist. LEXIS 1895 (S.D.N.Y. 2002)....................................12

*Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78 (2d Cir. 1985).............................6

*Zappie v. Hertlein*, 2016 U.S. Dist. LEXIS 3267 (W.D.N.Y.2016)...................................13

## Statutes and Regulations

N.Y. Exec. Law § 292 (1)..............................................................................22

N.Y. Exec. Law § 296 (5) (b) ......................................................................19, 21

N.Y. Gen. Oblig. Law § 5-701 ......................................................................16, 17

N.Y. Gen. Oblig. Law § 5-703.........................................................................16

## Rules of Civil Procedure

Fed. R. Civ. P.8(a)(2)...................................................................................5

Fed. R. Civ. P.8(d)(2)..................................................................................18

Fed. R. Civ. P.8(d)(3)..................................................................................18

Fed. R. Civ. P. 12(b)(6)..................................................................................5

Fed. R. Civ. P. 15(a)...................................................................................13

## PRELIMINARY STATEMENT

Plaintiffs Mary Catherine Van Bortel a/k/a Kitty Van Bortel and Howard G. Van Bortel (collectively referred to herein as the "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion filed by defendant Ford Motor Company ("Defendant" or "Ford"), which seeks the dismissal of Plaintiffs' Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendant Ford's motion should be denied in its entirety, with prejudice.

## STATEMENT OF FACTS

Van Bortel is a female automobile dealer who has owned and operated a franchised Ford dealership in the Rochester, New York area for the past twenty (20) years. *See Amended Complaint, par. 5.* During that time, Van Bortel Ford has consistently had the highest sales performance and customer service scores in the market area. *See Amended Complaint, par. 6.* In fact, Van Bortel Ford has been the #1 selling Ford dealer in the market area every year for the last twenty (20) years. *See Amended Complaint, par. 7.* Further, Van Bortel has been the recipient of the Ford President's Award for each of the past ten (10) years and received the prestigious National Time Dealer of the Year Award, in addition to the Ford Salute to Dealer's Award, the ONE Ford Elite Award, the Automotive News 100 Leading Women in North America Award, and the Rochester ATHENA Award. *See Amended Complaint, par. 8.*

On or about September 8, 2021, Ford area representative, Paul Bucek ("Bucek"), contacted Van Bortel and informed her that the Henderson Ford dealership, located in Webster, New York, was being sold, subject to Ford's right of first refusal. *See Amended Complaint, par. 9.* Bucek, on behalf of Ford, further promised, offered and represented to Van Bortel that, if Plaintiffs were interested in purchasing the Henderson Ford dealership, Ford would exercise its right of first

1

refusal and assign the Purchase and Sale Agreement ("PSA") to Plaintiffs. On behalf of Plaintiffs, Van Bortel accepted and agreed to Ford's offer, promise and representations concerning the assignment of the PSA (the "First Ford Agreement"). *See Amended Complaint, par. 10.*

It should be noted that both Van Bortel Ford and Henderson Ford are located on the east side of Rochester, New York. *See Amended Complaint, par. 11.* The Henderson Ford dealership is located only seven (7) miles north of Van Bortel Ford's dealership. *See Amended Complaint, par. 12.* Moreover, Van Bortel Ford has approximately 3,000 customers within Henderson Ford's territory. *See Amended Complaint, par. 13.* As such, Plaintiffs, in reliance on Ford's offer, promise and representations, which were accepted and agreed to by Van Bortel on behalf of Plaintiffs (i.e., the First Ford Agreement), entered into a nondisclosure agreement with Ford. *See Amended Complaint, par. 14.*

On or about September 17, 2021, Bucek and Ford representative, Brennen Murray ("Murray"), called Van Bortel and, in breach of the First Ford Agreement, informed her that Ford had decided not to approve the Henderson Ford PSA and, therefore, could not assign the PSA to Plaintiffs. *See Amended Complaint, par. 15.* Notwithstanding Ford's breach of the First Ford Agreement, during the September 17, 2021 telephone call, Van Bortel reiterated Plaintiffs' interest in purchasing the Henderson Ford dealership and proposed the following offer to Ford - in the event that another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Amended Complaint, par. 16.* Bucek, on behalf of Ford, accepted this offer and verbally promised and represented to Van Bortel that, if another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs (the "Second Ford Agreement"). *See Amended Complaint, par. 17.*

2

On October 25, 2021, Bucek informed Van Bortel that Henderson Ford had entered into a PSA with another Ford dealer, West-Herr. *See Amended Complaint, par. 18.* Notwithstanding the First Ford Agreement and the Second Ford Agreement (collectively, the "Agreements") entered into between Ford and Plaintiffs, Bucek informed Van Bortel that, in material breach of the Agreements, Ford would not be exercising its right of first refusal and would not assign the PSA to Plaintiffs. *See Amended Complaint, par. 19.*

Upon information and belief, West-Herr currently owns a Ford dealership in the Rochester area, but it is located on the west side of Rochester. *See Amended Complaint, par. 20.* Upon information and belief, West-Herr is owned and operated by a male dealer. *See Amended Complaint, par. 21.*

On or about October 27, 2021, Van Bortel spoke with Ford's Retail Network U.S. Franchise Manager, Edie Lukas, regarding the Agreements. In the course of their conversation, Van Bortel explained how she had fought to establish herself as a successful female Ford dealer. In response, Lukas stated that "minority dealers are not a priority right now" for Ford. *See Amended Complaint, par. 22.*

Plaintiffs are ready, willing and able to proceed with the purchase of the Henderson Ford dealership on the same terms agreed to in the West-Herr PSA. *See Amended Complaint, par. 23.* Plaintiffs are clearly the most qualified candidate to purchase the Henderson Ford dealership. *See Amended Complaint, par. 24.* Van Bortel has repeatedly demanded that Ford honor the Agreements by exercising its right of first refusal and assigning the PSA to Plaintiffs. *See Amended Complaint, par. 25.* To date, Ford has failed and/or refused to abide by the clear and unambiguous terms of the parties' Agreements. *See Amended Complaint, par.*

Upon information and belief, Ford "rushed" the approval and finalization of the sale of Henderson Ford to West-Herr. *See Amended Complaint, par. 50.* At Ford's instruction and with Ford's approval, consent, knowledge, and acquiescence, it took only slightly over thirty (30) days from contract for West-Herr to close on its purchase of Henderson Ford while, in the usual course, it takes approximately one hundred twenty (120) days from contract to close on the sale of a franchised automobile dealership. *See Amended Complaint, par. 51.*

As a result of the foregoing, Plaintiffs commenced this action by filing a Summons and Verified Complaint in the Supreme Court of the State of New York, County of Monroe, on November 15, 2021, under Index No. E2021010285, seeking money damages for breach of contract and injunctive relief. *A true and accurate copy of the Summons and Complaint is annexed hereto as Exhibit "A".* Thereafter, Plaintiffs submitted an Amended Complaint dated December 7, 2021, asserting an additional cause of action for gender discrimination in violation of New York State Executive Law § 296(5)(B). *A true and accurate copy of the Amended Complaint is annexed hereto as Exhibit "B".*

On December 13, 2021, Defendant Ford removed this action to the United States District Court, Western District of New York, pursuant to 28 U.S.C. 1441 and 28 U.S.C. 1332. *A true and accurate copy of Defendant's Notice of Removal to Federal Court is annexed hereto as Exhibit "C".* Thereafter, Plaintiffs extended Defendant's time to respond to the Amended Complaint to February 3, 2022.

Defendant Ford now seeks dismissal of the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiffs have failed to state a cause of action. Based on the foregoing and as set forth below, defendant Ford's motion should be denied in its entirety, with prejudice.

4

## LEGAL STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face". *Id.* at 570; *see also* Fed. R. Civ. P. 8(a)(2). The Court must draw all reasonable inferences in favor of the non-moving party. *See Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level". *See Twombly, supra*, 550 U.S. at 555.  As the Supreme Court has affirmed:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face...A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. ... The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  *See Goldman v. Belden*, 754 2d 1059 (2d Cir. 1985).  In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will

not be accepted as true. *See New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions*, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

## ARGUMENT

### I.  PLAINTIFFS HAVE STATED A VALID CLAIM FOR BREACH OF AN ORAL CONTRACT

#### A.  Plaintiffs Have Adequately Pled the Existence of an Actual Contract

In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages. *See Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). An oral agreement, like any other contract, will be enforceable where there is manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. *See Saul v. Cahan,* 153 A.D.3d 947, 950 (2d Dep't 2017). Determining whether the parties intended to be bound to an oral agreement requires an examination of several factors, including "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *See Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985) (internal citations omitted).

Moreover, it is well-settled that, if an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract. *See Rosenbaum v. Premier Sydell, Ltd.*, 240 A.D.2d 556, 557 (2d Dep't 1997). On a motion to dismiss, a breach of contract claim will survive only if the essential terms of the contract are alleged in nonconclusory language, including the specific provisions of the contract upon which liability is predicated. *See Oberstein v. SunPower Corp.*, 2010 U.S. Dist. LEXIS 41402, at *5 (E.D.N.Y. Apr. 28, 2010).

6

Contrary to defendant Ford's assertions, here, the Plaintiffs have pled the existence of a valid oral contract with the requisite definiteness. In this regard, and as alleged in the Amended Complaint, on or about September 8, 2021, Ford area representative Paul Bucek contacted Van Bortel and informed her that the Henderson Ford dealership, located in Webster, New York, was being sold, subject to Ford's right of first refusal. *See Amended Complaint, par. 9.* Bucek, on behalf of Ford, further promised, offered and represented to Van Bortel that, if Plaintiffs were interested in purchasing the Henderson Ford dealership, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs.  On behalf of Plaintiffs, Van Bortel accepted and agreed to Ford's offer, promise and representations concerning the assignment of the PSA. *See Amended Complaint, par. 10.* Both Van Bortel Ford and Henderson Ford are located on the east side of Rochester, New York. *See Amended Complaint, par. 11.* The Henderson Ford dealership is located only seven (7) miles north of Van Bortel Ford's dealership. *See Amended Complaint, par. 12.* Moreover, Van Bortel Ford has approximately 3,000 customers within Henderson Ford's territory. *See Amended Complaint, par. 13.* As such, Plaintiffs, in reliance on and as consideration for Ford's offer, promise and representations, which were accepted and agreed to by Van Bortel on behalf of Plaintiffs (i.e., the First Ford Agreement), entered into a nondisclosure agreement with Ford. *See Amended Complaint, par. 14.*

On or about September 17, 2021, Bucek and Ford representative, Brennen Murray, called Van Bortel and, in breach of the First Ford Agreement, informed her that Ford had decided not to approve the Henderson Ford PSA and, therefore, could not assign the PSA to Plaintiffs. *See Amended Complaint, par. 15.* Notwithstanding Ford's breach of the First Ford Agreement, during the September 17, 2021 telephone call, Van Bortel reiterated Plaintiffs' interest in purchasing the Henderson Ford dealership and proposed the following offer to Ford - in the event that another

7

Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Amended Complaint, par. 16.* Bucek, on behalf of Ford, accepted this offer and verbally promised and represented to Van Bortel that, if another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Amended Complaint, par. 17.*

On October 25, 2021, Bucek informed Van Bortel that Henderson Ford had entered into a PSA with another Ford dealer, West-Herr. *See Amended Complaint, par. 18.* Notwithstanding the Agreements entered into between Ford and Plaintiffs, Bucek informed Van Bortel that, in breach of the Agreements, Ford would not be exercising its right of first refusal and would not assign the PSA to Plaintiffs. *See Amended Complaint, par. 19.*

As is evident, Plaintiffs have adequately alleged the requisite elements to state a claim for breach of an oral contract.    Notwithstanding the sufficiently plead claim alleged by Plaintiffs, Defendant Ford places great emphasis on the nondisclosure agreement signed by the Plaintiffs, arguing that it undercuts Plaintiffs' claims of mutual assent to an oral contract. However, Ford fails to consider that the nondisclosure agreement was only signed in reliance on Ford's offer, promise and representations, which were accepted and agreed to by Van Bortel on behalf of Plaintiffs, in connection with the First Ford Agreement. *See Amended Complaint, par. 14.* As such, it played no role whatsoever in the Second Ford Agreement entered into on or about September 17, 2021, more than two (2) weeks after the nondisclosure agreement was signed. *See Exhibit "C" annexed to Defendant's moving papers; Amended Complaint, par. 14.*

Moreover, and importantly, the nondisclosure agreement, dated September 1, 2021, was expressly limited to "the proposed transaction involving Webster Ford Inc. dba Henderson Ford" and indicates that it cannot be construed to obligate either party "to the above-mentioned

transaction". *See Exhibit "C" annexed to Defendant's moving papers*. After that date, on or about September 17, 2021, Bucek and Ford representative, Brennen Murray, informed Van Bortel that Ford had decided not to approve the Henderson Ford PSA and, therefore, could not assign the PSA to Plaintiffs. *See Amended Complaint, par. 15.* As such, the specific transaction referenced in the nondisclosure agreement was terminated. By its own terms, the nondisclosure agreement could not apply to any future proposed transactions. Even if Ford were somehow correct that the Non-Disclosure Agreement somehow undercuts the First Ford Agreement, which it does not, it cannot be said to undercut the Second Ford Agreement, whereby Ford promised that, if another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Amended Complaint, par. 17.*

Defendant Ford further argues that the oral agreement in unenforceable because Plaintiffs have failed to sufficiently plead the material terms of the alleged contract. However, this argument is inherently misleading (and obfuscates the contract alleged by Plaintiffs to be analyzed by the Court – the Agreements), since it improperly conflates the underlying PSA with the contract at issue here. In this regard, the oral agreement between the parties provided that, if another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Amended Complaint, par. 17.* As such, the Second Ford Agreement was not itself the PSA entered into between West-Herr and Henderson Ford (i.e., the contract for the purchase and sale of a franchise), but simply one between Plaintiffs and Ford obligating Ford to exercise its right of first refusal with respect to any PSA entered into by Henderson Ford and to assign such contract to Plaintiffs.

Stated otherwise, the Second Ford Agreement was an oral contract to exercise a right of refusal and assign a contract to the Plaintiffs. As such, it was not necessary for the parties to include

details of the purchase price of the dealership, the timing of the transaction, or the assignment of assets and liabilities, since these terms are not material (nor relevant) to the contract at issue.

In an effort to demonstrate that Plaintiffs have not sufficiently pled the critical terms of the alleged oral agreement, defendant Ford highlights the facts in *Kunica v. St. Jean Fin.*, 1998 U.S. Dist. LEXIS 11867 (S.D.N.Y. 1998). In that case, the Court considered an alleged oral contract to obtain financing for a company in exchange for an option to purchase company stock. The Court held that the plaintiff had failed to plead the existence of an enforceable contract because essential terms of the contract, including the specific provisions upon which liability was predicated, were omitted. Defendant Ford argues that the level of detail in the allegations of *Kunica* far surpasses the details alleged by the Plaintiffs in the Amended Complaint; therefore, Ford somehow contends that the allegations asserted by Plaintiffs as to the Agreements may not sustain a breach of contract claim. Ford is wrong.

Contrary to defendant Ford's contention, however, *Kunica* is readily distinguishable. As just one example, while the alleged oral agreement in *Kunica* provided that a secured loan would be purchased by a "new lender", it failed to identify who that "new lender" would be. Further, although the alleged oral agreement provided that a line of credit would "substantially increase," it failed to specify the amount of the increase. Third, the alleged oral agreement in *Kunica* was silent with respect to the amount of stock options to be awarded as consideration, the exercise price of the stock options, or the date on which they could be exercised. After a close examination of the terms and conditions alleged in *Kunica*, the Court concluded, "[t]hese omissions, which go to the entire essence of the contemplated transaction, are fatal to the existence of a valid and enforceable oral agreement." *Id.* at *15-*17.

Unlike *Kunica*, where the terms and conditions alleged failed to include several key items and therefore precluded the existence of an enforceable contract, here, the facts alleged in this case have sufficiently pled the critical terms of the alleged oral agreements. In this regard, the oral agreements between the parties provided that, if another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Amended Complaint, par. 17.* As such, defendant Ford's reliance on *Kunica* is misplaced.

Moreover, it is well settled that courts have declined to dismiss breach of contract claims even where the factual allegations were not highly detailed. For example, in *Fort Prods. v. Men's Med. Clinic, LLC*, 2016 U.S. Dist. LEXIS 22399 (S.D.N.Y. 2016), the parties allegedly agreed that Defendant would retain Plaintiff to provide marketing and advertising services for one year, and Defendant would pay the "fair and reasonable value" for such services. Plaintiff sought damages for breach of contract and the defendant moved to dismiss, noting the absence of any allegations regarding the amount of compensation to be paid, the specific services to be provided, the due date for payment, and the date such payment was demanded under the alleged contract. However, the Court denied the motion, holding that "these are non-conclusory allegations that must be read in favor of the plaintiff on a motion to dismiss. Discovery in this case will reveal further details of the parties' agreement." *Id.* at *7-*8.

Similarly, in *Puchalski v. FM Constr. Inc.*, 2020 U.S. Dist. LEXIS 213959 (S.D.N.Y. 2020), plaintiff sued seeking wages to which he claimed to be entitled pursuant to an oral employment contract. The defendants argued that the pleading offered did not sufficiently identify the oral contract allegedly breached, since it provided only "scant information" and failed to identify where the contract was executed or who entered into the contract on behalf of defendants. However, the Court noted that the allegations included many details about the alleged oral

agreement, including when and where it was executed, the employee authorized to enter into the such contracts by defendants, the work to be done, and the wage rate. Accordingly, the Court denied the motion to dismiss, holding, "These details, though somewhat sparse, are sufficiently precise to survive a motion to dismiss." *Id.* at \*9-\*Here, Plaintiffs have adequately alleged all the material terms of the contract in question with sufficient definiteness to survive dismissal, akin to the holdings in *Fort Prods.* and *Puchalski*.

Here, the oral agreement between the parties was not the underlying PSA between Henderson Ford and West-Herr, but rather, simply an agreement between Ford and Plaintiffs that provided that, if another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Amended Complaint, par. 17.*

Based on the foregoing, Defendant Ford's motion to dismiss Plaintiffs' First Cause of Action should be denied, with prejudice.

### B.  Should the Court Find that Plaintiffs Have Not Adequately Pled the Existence of an Actual Contract, Plaintiffs Should Be Permitted to Amend their Pleading

As set forth above, Plaintiffs maintain that the Amended Complaint adequately alleges each and every element necessary to establish the existence of a valid contract. *See Point I(a) supra.* However, to the extent that the Court disagrees and is inclined to dismiss the Plaintiffs' First Cause of Action for breach of contract, such dismissal should be without prejudice and with leave to replead.

In this regard, "[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead. . . . Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *See Vacold v. Cerami*, 2002 U.S. Dist. LEXIS 1895, \*19 (S.D.N.Y. 2002). If a plaintiff has "at least colorable grounds for relief,

justice does . . . require leave to amend." *See Kaster v. Modification Sys., Inc.*, 731 F.2d 1014, 1018 (2d Cir. 1984).

Moreover, the Second Circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6) and has indicated that where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend. *See Holland v. Goord*, 2006 U.S. Dist. LEXIS 47537 (W.D.N.Y. 2006); *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252-53 (2d Cir.1991) (remanding where plaintiff, faced with the Eleventh Amendment immunities of the named defendants, requested leave to replead claims against the defendants in their personal capacities); *Ronzani v. Sanofi S.A.,* 899 F.2d 195 (2d Cir.1990) (finding abuse of discretion where District Court failed to allow repleading where the plaintiff made no motion to replead but noted his desire to replead if the motion were granted in his opposition brief).  In that regard, if there is a chance that "the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *See Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991); *see also Holland v. Goord*, 2006 U.S. Dist. LEXIS 47537 (W.D.N.Y. 2006); *Zappie v. Hertlein*, 2016 U.S. Dist. LEXIS 3267 (W.D.N.Y.2016).

Here, Ford's motion largely is based on its incorrect contention that Plaintiffs have failed to plead necessary facts (as opposed to Plaintiffs being unable to ever plead necessary facts). Plaintiffs' claims have not been previously dismissed, and no discovery has been afforded to Plaintiffs to bolster their case. As such, should this Court dismiss Plaintiffs' breach of contract claim (which it should not), such dismissal should be without prejudice and with leave to replead.

Moreover, under Rule 15(a), leave to amend a pleading "shall be given freely when justice so requires." *See* Fed. R. Civ. P. 15(a). The Supreme Court has interpreted Rule 15 to permit such

amendments unless (1) the party seeking to amend has unduly delayed; (2) the party seeking to amend is acting with a dilatory motive; (3) the proposed amendment would cause undue prejudice to the opposing party; or (4) the proposed amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Whether to allow a party to amend its complaint is within the discretion of the district court. *Id.*

In that regard, Defendant incorrectly argues that any proposed amendment of the pleadings would be futile. An amendment is considered futile if it could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Riccuiti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). As the Second Circuit has explained, "the court should not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met." *Id.* (internal citation omitted). In applying this standard, a court must "read the facts alleged in the complaint in the light most favorable" to the non-moving party, and it must accept the allegations as true. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249 (1989).

Here, the factual allegations contained in the Second Amended Complaint adequately plead the existence of the Second Ford Agreement as an enforceable contract. Under New York law, in order to allege an enforceable contract, a plaintiff must plead "an offer, acceptance, and consideration, as well as a showing of a meeting of the minds, demonstrating the parties' mutual assent and mutual intent to be bound.'" *Brodie v. New York City Transit Auth.*, 2000 U.S. Dist. LEXIS 6144, at * 3 (S.D.N.Y. May 5, 2000). In this regard, the proposed Second Amended Complaint alleges that, during the September 17, 2021 telephone call, Van Bortel reiterated Plaintiffs' interest in purchasing the Henderson Ford dealership and proposed the following offer

14

to Ford - in the event that another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Exhibit D, par. 16.* Bucek, on behalf of Ford, accepted this offer and verbally promised and represented to Van Bortel that, if another Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Exhibit D, par. 17.* At that time, upon learning that Ford had decided not to approve the Henderson Ford PSA and, therefore, could not assign the PSA to Plaintiffs, Plaintiff Mary Catherine Van Bortel advised Bucek and Murray that she would be contacting Randy Henderson directly in an attempt to purchase his dealership by, among other things, offering him the same deal to sell Henderson Ford that had just fallen through. *See Exhibit D, par. 18.* During this same September 17 call with Bucek and Murray on behalf of Ford, that they requested that she refrain from contacting Randy Henderson to discuss the potential sale of his dealership to Plaintiffs, as Ford wanted to be the ones speak with him about the sale of the dealership. *See Exhibit D, par. 19.* As part of the Second Ford Agreement, Plaintiffs agreed to Ford's request to hold off on contacting Randy Henderson. *See Exhibit D, par. 20.* Were it not for the Second Ford Agreement and Ford's promise to exercise its right of first refusal and assign the PSA to Plaintiffs, Plaintiffs would not have hesitated to contact Randy Henderson immediately on September 17, 2021, upon learning that the initial proposed sale of his dealership had fallen through. *See Exhibit D, par. 21.*

As consideration for (and in reliance upon) Ford's offer, promise and representations, which were accepted and agreed to by Plaintiffs – i.e., the Second Ford Agreement – Plaintiffs refrained from contacting Randy Henderson to discuss a proposal by Plaintiffs to purchase his dealership. *See Exhibit D, par. 22.* As a result, it was not until approximately ten (10) days later, on September 27, 2021 when Plaintiffs finally attempted to contact Randy Henderson to discuss

the availability of his dealership. *See Exhibit D, par. 23.* Randy Henderson did not get back to Plaintiffs until October 19, 2021, when he advised that he was no longer intending to sell his dealership and would merely be hiring a new General Manager. *See Exhibit D, par. 24.*

In this regard, it is well-settled that a party's forbearance may constitute valuable consideration supporting a contract. *See JP Morgan Chase Bank, N.A. v. Maurer*, 2015 U.S. Dist. LEXIS 98870 (S.D.N.Y. 2015); *Levy v. Lucent Techs.*, 2003 U.S. Dist. LEXIS 414 (S.D.N.Y. 2003); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp.2d 228 (S.D.N.Y. 1999).

Based on the foregoing, the proposed Second Amended Complaint is not futile and leave to amend should be granted.

### C.  The Alleged Agreement Does Not Violate the Statute of Frauds

Defendant Ford further argues that the oral Agreements violate New York's Statute of Frauds and are therefore void.  However, this assertion willfully misconstrues the nature of the Agreements. In this regard, the Statute of Frauds, codified in New York's General Obligations Law § 5-701 et seq., requires a signed writing for certain kinds of contracts, including, inter alia, contracts that cannot be fully performed within one (1) year and contracts pertaining to real property. *See N.Y. Gen. Oblig. Law §§ 5-701, 5-703.*

Here, the parties entered into oral agreements that, in the event an approvable Ford dealer were to enter into a PSA with Henderson Ford, Ford would exercise its right of first refusal and assign the PSA to Plaintiffs. *See Amended Complaint, par. 16 and 17.* Again, Defendant seek to conflate the two underlying PSAs entered into by Henderson Ford with the oral agreements between Ford and Plaintiffs.  While it is alleged that the two underlying PSAs signed by Henderson Ford were transactions pertaining to real property, the Agreements merely obligated Ford to exercise its right of first refusal with respect to any Henderson PSA and assign the PSAs to

Plaintiffs.   As such, the agreements do not fall within the Statute of Frauds and no writing was required in order for the oral agreements between Plaintiffs and Ford to be enforceable.

Further, it is well-established that the Statute of Frauds neither applies to an agreement that "appears by its terms to be capable of performance within the year; nor to cases in which the performance of the agreement depends upon a contingency which may or may not happen within the year." *See North Shore Bottling Co. v. Schmidt & Sons*, 22 N.Y.2d 171, 176 (1968) (citation omitted). Instead, it applies to "those contracts only which by their very terms have absolutely no possibility in fact and law of full performance within one year." *See D&N Boening v. Kirsch Beverages*, 63 N.Y.2d 449, 454 (1984); *N.Y. Gen. Oblig. Law § 5-701*.

Here, the Agreements could easily have been performed within one (1) year if another Ford dealer entered into a PSA with Henderson Ford, as in fact happened. In this regard, on October 25, 2017, approximately only one (1) month after the parties entered into the Second Ford Agreement, Bucek informed Van Bortel that Henderson Ford had entered into a PSA with another Ford dealer, West-Herr. *See Amended Complaint, par. 18.*

Ford, therefore, could clearly have fully performed the Agreement by simply exercising its right of first refusal and assigning the PSA to Plaintiffs well within one (1) year. Furthermore, Plaintiffs have alleged that, in the usual course of business, it takes approximately one hundred twenty (120) days from contract to close on the sale of a franchised automobile dealership with the franchisor's approval. *See Amended Complaint, par. 51.* Here, however, Ford "rushed" the approval and finalization of the sale of Henderson Ford to West-Herr. It is alleged that it only took slightly over thirty (30) days from contract for West-Herr, with Ford's approval, knowledge, and acquiescence, to close on its purchase of Henderson Ford. *See Amended Complaint, par. 50-51.* Thus, it has been sufficiently alleged by Plaintiffs that it was clearly possible for their contract

with Ford (i.e., the Agreements) to be fully performed in less than one (1) year. As such, the Statute of Frauds does not apply, no writing was required, and the Agreements are enforceable.

In an effort to invalidate the Agreements, defendant Ford improperly attempts to cast the Agreements as contracts relating to real property, relying on Plaintiffs' allegations in support of their Second Cause of Action for gender discrimination. However, pursuant to Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *See Fed. R. Civ. P. 8(d)(2).*

In addition, Rule 8(d)(3) states, "A party may state as many separate claims or defenses as it has, **regardless of consistency**." *See Fed. R. Civ. P. 8(d)(3)(emphasis added).* As such, it is well-settled that at the pleading stage, a party is entitled to plead in the alternative. *See Capax Discovery, Inc. v. AEP RSD Inv'rs*, 285 F. Supp. 3d 579 (W.D.N.Y. 2018) (permitting plaintiff to pursue claims for both equitable rescission of contract and money damages at pleading stage); *Johnson v. City of New York*, 2018 U.S. Dist. LEXIS 1046 (E.D.N.Y. Jan. 3, 2018) (plaintiff permitted to alternately plead that defendant discriminated as a state actor and in his personal capacity). Therefore, it is immaterial that Plaintiffs raised alternate allegations or theories of liability in support of their Second Cause of Action. As set forth above, the Amended Complaint adequately pleads the existence of a contract requiring Ford to exercise its right of first refusal and assign the PSA to Plaintiffs, which does not fall within the Statute of Frauds.

Based on the foregoing, Defendant Ford's motion to dismiss Plaintiffs' First Cause of Action should be denied, with prejudice.

18

## II.  PLAINTIFFS HAVE STATED A VALID CLAIM FOR GENDER DISCRIMINATION UNDER NEW YORK EXECUTIVE LAW § 296(5)(B)

Plaintiffs' Second Cause of Action charges Defendant Ford with gender discrimination in violation of New York Executive Law § 296(5)(b). In this regard, the statute provides:

> "(b) It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, or managing agent of, or other person having **the right of ownership or possession of or the right to sell, rent or lease, land or commercial space**...
>
> > (1) To refuse to sell, rent, lease or otherwise deny to or withhold from any person or group of persons land or commercial space because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, age, disability, marital status, or familial status of such person or persons, or to represent that any housing accommodation or land is not available for inspection, sale, rental or lease when in fact it is so available;
> >
> > (2) To discriminate against any person because of race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, age, disability, marital status, or familial status in the terms, conditions or privileges of the sale, rental or lease of any such land or commercial space; or in the furnishing of facilities or services in connection therewith...."

*See N.Y. Exec. Law § 296(5)(b) (Emphasis Added).*

In arguing that the gender discrimination claim should be dismissed, Ford now contends that the Plaintiffs have alleged only that Ford would assign the PSA to the Plaintiffs, not that they would lease or sell any land or commercial space. It should be noted that this argument undermines Ford's arguments seeking the dismissal of Plaintiffs' breach of contract claim(s). Indeed, in seeking to dismiss the Plaintiffs' breach of contract claim(s), Ford argues that the alleged oral contracts concern the transfer of real property and fail to satisfy the Statute of Frauds.

In any event, as stated above, the statute in question clearly, expressly and unambiguously prohibits any "person having the right of ownership or possession of or the right to sell, rent or lease, land or commercial space..." from refusing to "sell, rent, lease or otherwise deny to or

withhold from any person or group of persons land or commercial space because of ... gender."

New York Executive Law § 296(5)(b). Here, Plaintiffs have repeatedly alleged in detail and in no

uncertain terms that Ford had the right to sell, rent or lease land or commercial space via its right

to exercise a right of first refusal over the two Henderson Ford PSAs.

As just one example, Plaintiffs specifically allege that "the PSA with respect to both the

First Ford Agreement and the Second Ford Agreement concerned not only the sale of the

Henderson Ford dealership, but also the right to purchase, rent or lease, land or commercial space."

*See Amended Complaint, par. 47.* Plaintiffs further allege that "Defendant Ford wrongfully and

illegally discriminated against Van Bortel based upon her gender by, inter alia, intentionally failing

and/or refusing, on two separate occasions (despite its promises otherwise), to exercise its right of

first refusal and assign the PSAs (along with the right to purchase, rent or lease, land or commercial

space) to Van Bortel and, instead, purposely and intentionally permitted a male to purchase

Henderson Ford." *See Amended Complaint, par. 49.*

New York courts have consistently held that Executive Law § 296(b)(5) is applicable in

the context of a franchise relationship. For example, in *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d

333 (S.D.N.Y. 2009), the plaintiff claimed that 7-Eleven improperly denied her application to

become a franchisee based on her age, which, like gender, is a protected category under Executive

Law § 296(5)(b). In reviewing her claims, the Court noted that 7-Eleven leased commercial space

to its franchisees. As such, the Court denied 7-Eleven's motion for summary judgment, concluding

"denying Plaintiff a 7-Eleven franchise for the alleged discriminatory reasons would be covered

by said statute [Executive Law § 296(5)(b)], particularly given the landlord/tenant type

arrangement in the franchise." *Id.* at 352.

In this regard, and again, the Plaintiffs have clearly alleged that Ford, through its ability to exercise a right of first refusal with respect to any Henderson Ford PSA, had "the right of ownership or possession of or the right to sell, rent or lease, land or commercial space…" *See N.Y. Exec. Law § 296(5)(b)*. Again, as expressly, clearly and unambiguously alleged in the Amended Complaint, the assignment of the PSA (which was controlled by Ford through its exercise of the right of first refusal over any Henderson Ford PSA) would have included the sale, rental, or lease of the commercial space occupied by the Henderson Ford dealership. Both Van Bortel Ford and Henderson Ford are located on the east side of Rochester, New York. *See Amended Complaint, par. 11.* The Henderson Ford dealership is located only seven (7) miles north of Van Bortel Ford's dealership. *See Amended Complaint, par. 12.* Van Bortel Ford has approximately 3,000 customers within Henderson Ford's territory. *See Amended Complaint, par. 13.* It is clear that the acquisition of the specific commercial space occupied by Henderson Ford was an integral part of the assignment of the PSA, which made the acquisition of the dealership particularly attractive to Plaintiffs and which made Plaintiffs the more qualified purchasers. As such, by refusing to exercise its right of first refusal over either of the two Henderson PSAs, and assign either of those PSAs to Plaintiffs, defendant Ford, through its "right of ownership or possession of or the right to sell, rent or lease, land or commercial space…" *(N.Y. Exec. Law § 296(5)(b))* refused to sell, rent, or lease commercial space based on gender, in violation of the statute.

The facts of this case strongly resemble those in *Lucy v. Amoco Oil Co.*, 582 F. Supp. 1168 (E.D. Mich. 1984). In that case, following the male franchisee's death, Amoco allegedly chose to terminate the franchise agreement, which included a lease of the service station and the land on which it was situated, and refused to enter into a similar agreement with the franchisee's surviving wife and daughters. The survivors sued, alleging gender discrimination under a Michigan statute

21

which, like New York's Executive Law § 296, prohibited discrimination in the "terms, conditions or privileges" of a real estate transaction. Amoco sought to dismiss, arguing, in pertinent part, that the franchise agreement included the license to use Amoco's trademark and trade name and the sale of its products by the franchisee, while the leasehold provision was a "minor incident of the franchise agreement". The Court denied the motion to dismiss, concluding that the licensing constituted a "condition or privilege of a real estate transaction" within the meaning of the Michigan statute and holding: "Amoco has chosen to tie the licensing of its trademark and tradename to a leasehold interest. Having done so, its argument that it should not be subjected to the legitimate interests of the state to regulate such real property transactions rings hollow." *Id.* at 1172.

Defendant Ford next contends that Plaintiffs cannot assert a claim for discrimination because the dealership is owned by a corporate entity. Without citing to any authority whatsoever, Ford argues that New York Executive Law § 296(5)(b) was enacted solely to prevent discrimination against individuals and not corporations. However, this assertion is belied by the express terms of the statute itself. In this regard, New York Executive Law § 292(1), which defines the terms used throughout this article of the law, states: "The term 'person' includes one or more individuals, partnerships, associations, **corporations,** legal representatives, trustees, trustees in bankruptcy, or receivers." *See N.Y. Exec. Law § 292(1) (emphasis added).* Plaintiffs do not dispute that the dealership is owned by a corporation, Van Bortel Ford, Inc., with plaintiff Mary Catherine Van Bortel as a shareholder and the Chief Executive Officer. *See Exhibit "D" annexed to Defendant's moving papers.* While the corporation has no gender, discrimination against its female C.E.O. on the basis of her sex, as alleged in the Amended Complaint, necessarily damages the corporation as well. Therefore, both the corporate entity Van Bortel Ford, Inc. and its individual

C.E.O., plaintiff Mary Catherine Van Bortel, qualify as "persons" entitled to protection from gender discrimination under the statute.

Defendant Ford reliance on the argument that any alleged transfer of a PSA would be to the corporate entity and not to the individual Plaintiffs is further belied by the Plaintiffs' allegations that it was the individual Plaintiffs, not the corporate entity, who entered into the verbal agreement with Ford for the assignment of the PSA including the right to purchase, rent or lease, land or commercial space. It is therefore the individual Mary Catherine Van Bortel that has been the victim of gender discrimination prohibited under the statute.

It should be noted that Ford, in seeking to dismiss Plaintiffs' breach of contract claim(s) relies upon the Non-Disclosure Agreement (attached as Exhibit "C" to Ford's motion to dismiss). The very same Non-Disclosure Agreement, however, undercuts Ford's argument here as it was signed by Mary Catherine Van Bortel and not a corporate entity which owns the Plaintiffs' Ford dealership.

Finally, defendant Ford attempts to attack the factual sufficiency of Plaintiffs' allegations, asserting that the discrimination claim is based on a "nonexistent" contract and that Plaintiffs have not alleged a discriminatory reason for Ford's refusal to assign the PSA to Plaintiffs. This argument falls flat.

First, the defendant's discriminatory actions are not predicated on the existence of a contract, as defendant Ford's refusal to assign the PSA to Plaintiffs based on gender would form a separate and independent basis for a claim under the Executive Law even in the absence of a contract. Nevertheless, as set forth hereinabove, valid contracts did exist between the parties, pursuant to which defendant Ford agreed to assign the PSAs to Plaintiffs and permit them to eventually purchase, rent, or lease the commercial space for the Henderson Ford dealership.

For the sake of brevity, we respectfully refer the Court to the arguments in Point I *supra* regarding the validity and enforceability of the contracts at issue in this case.

Moreover, with regard to Ford's discriminatory conduct, the Amended Complaint alleges as follows: "On or about October 27, 2021, Van Bortel spoke with Ford's Retail Network U.S. Franchise Manager, Edie Lukas, regarding the Agreements. In the course of their conversation, Van Bortel explained how she had fought to establish herself as a successful female Ford dealer. In response, Lukas stated that 'minority dealers are not a priority right now' for Ford." *See Amended Complaint, par. 22.* Defendant Ford attempts to blunt the impact of this statement, dismissing it as vague. However, when viewed in the full context of the Amended Complaint's allegations, the statement clearly indicates that defendant Ford discriminated against Mary Catherine Van Bortel based on gender in refusing to assign the PSA to Plaintiffs.

In this regard, in East Rochester, Van Bortel Ford has consistently had the highest sales performance and customer service scores in the market. *See Amended Complaint, par. 39.* Van Bortel Ford has been the #1 selling Ford dealer in the market area every year for the last twenty (20) years. *See Amended Complaint, par. 40.* Further, Van Bortel has been the recipient of the Ford President's Award for each of the past ten (10) years and has also received the prestigious National Time Dealer of the Year Award, in addition to the Ford Salute to Dealer's Award, the ONE Ford Elite Award, the Automotive News 100 Leading Women in North America Award, and the Rochester ATHENA Award. *See Amended Complaint, par. 41.* Moreover, Plaintiffs were and are ready, willing and able to proceed with the purchase of the Henderson Ford dealership on the same terms agreed to in the West-Herr PSA. *See Amended Complaint, par. 23.* Yet, despite her superior qualifications, defendant Ford elected not to exercise its right of first refusal and assign the PSA to Plaintiffs. Instead, Ford elected to approve the purchase of the Henderson Ford dealership by

West-Herr, which is owned and operated by a male dealer. *See Amended Complaint, par. 18-20.* Ms. Van Bortel contacted Ford in an effort to discover why Ford would refuse to honor the Agreements and assign the PSA to her, in light of her history as a highly successful Ford dealer. In this context, the statement that "minority dealers are not a priority right now" for Ford sufficiently states a claim for discrimination in violation of Executive Law § 296(5)(b). *See DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333 (S.D.N.Y. 2009) (alleged statement that franchise application should be denied because plaintiff was a single female over the age of forty states an actionable claim).

Based on the foregoing, Defendant Ford's motion to dismiss Plaintiffs' Second Cause of Action should be denied, with prejudice.

## CONCLUSION

For the forgoing reasons, as well as those set forth in the Plaintiffs' Amended Complaint, Defendant Ford's motion for dismissal should be denied in its entirety, with prejudice.

Dated: Mineola, New York
   March 14, 2022

          Respectfully submitted,

By:    _Steven H. Blatt_

      Steven H. Blatt, Esq.
      BELLAVIA BLATT, P.C.
      *Attorneys for Plaintiffs*
      *Mary Catherine Van Bortel, a/k/a Kitty Van Bortel, and Howard G. Van Bortel*
      200 Old Country Road, Suite 400
      Mineola, New York 11501