UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────x

MARY CATHERINE VAN BORTEL a/k/a KITTY
VAN BORTEL, and HOWARD G. VAN
BORTEL,                                          Honorable Judge David G. Larimer

               Plaintiffs,            Case No. 21-cv-6739 (DGL)

   - against -

FORD MOTOR COMPANY,

               Defendant.
───────────────────────────────x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF FORD MOTOR COMPANY'S PRE-ANSWER MOTION TO DISMISS THE AMENDED COMPLAINT

 

AARONSON RAPPAPORT
FEINSTEIN & DEUTSCH, LLP
*Attorneys for Defendant*
*Ford Motor Company*
600 Third Avenue
New York, New York 10016
(212) 593-6700

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    A.    PLAINTIFFS' OPPOSITION FAILS TO STATE THE EXISTENCE OF AN ACTUAL CONTRACT AND THEREFORE THE CLAIM MUST BE DISMISSED ............................. 2

    B.    PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE THE ALLEGED CONTRACT IS VOID UNDER THE STATUTE OF FRAUDS AND PLAINTIFFS' ARGUMENT THAT THE PSA WAS NOT PART OF THE ALLEGED VERBAL CONTRACT IS WITHOUT MERIT ..................................................................... 7

    C.    PLAINTIFF VAN BORTEL'S NEW YORK STATE EXECUTIVE LAW § 296(5)(b) CLAIM SHOULD BE DISMISSED BECAUSE VAN BORTEL'S SOLE CONNECTION TO AN ALLEGED DISCRIMINATORY ACT IS PREMISED UPON A CONTRACT THAT CANNOT LEGALLY EXIST AND AN ALLEGED ACT THAT IS NOT DISCRIMINATORY UNDER THE LAW ........................................................................................................... 8

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*American Centennial Ins. Co. v. Seguros La Republica, S.A.*, 1996 U.S. Dist. LEXIS 7729 ........ 8

*Fort Prods. v. Men's Med. Clinic, LLC,* 2016 U.S. Dist. LEXIS 22399 (S.D.N.Y. 2016) ............ 4

*Kunica v. St. Jean Fin.*, 1998 U.S. Dist. LEXIS 11867 .................................................................. 4

*Nick's Garage, Inc., v. Progressive Cas. Ins. Co.,* 875 F.3d. 107 (2d Cir. 2017) .......................... 6

*Puchalski v. FM Constr. Inc.,* 2020 U.S. Dist. LEXIS 213959 (S.D.N.Y. 2020) .......................... 4

*Roulley v. Inex Co.*, 677 F.2d 14 (2d Cir. 1982) ........................................................................... 7

## Rules

Federal Rule of Civil Procedure 12(b)(6), ..................................................................................... 1

## PRELIMINARY STATEMENT

Defendant, Ford Motor Company (hereinafter "Ford"), by and through its attorneys, Aaronson Rappaport Feinstein & Deutsch, LLP, submit this reply memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint, with prejudice, for failure to state a claim upon which relief can be granted.

Plaintiffs' opposition is both illogical and legally insufficient to overcome Ford's motion to dismiss. Plaintiffs' own allegations do not support Plaintiffs' attempt to dissect the exercise of the right of first refusal from the assignment of the PSA, in a vein effort to avoid all of Ford's arguments (see , Exhibit B ¶s10, 16, 17, 30, and 49 and Plaintiffs' Exhibit D Proposed Amended Complaint ¶s 10, 16, 17, 33, and 38). Simply put, it is Plaintiffs' allegation, and not Ford's interpretation, that Ford entered into a verbal contact to *assign* the purchase of the dealership to the Plaintiffs. And, it is Plaintiffs' allegation, not Ford's interpretation, that the PSA pertained to the transfer of land or commercial space. Specifically, the Amended Complaint and proposed Second Amended Complaint clearly states that the PSA "concerned not only the sale of the Henderson Dealership, but also the right to purchase, rent, or lease, land or commercial space" (see Exhibit B ¶s47 and 49, and Plaintiffs' Exhibit D ¶s 55, and 57).

While Ford's contention is that no contract ever existed between the Plaintiffs and Ford, if the allegation of a contract is accepted as true, for the purpose of this motion, that contract violates the Statute of Frauds and therefore, the breach of contract claim must be dismissed in its entirety and any attempt to amend would be futile. Similarly, Plaintiffs' fatally flawed breach of contract claim forms the only basis for Plaintiff Mary Catherine Van Bortel's alleged discrimination claim and therefore, must be dismissed. Further, the alleged statement attributed to Ford is not discriminatory under the law. The proposed Second Amended Complaint does not cure these fatal

flaws and leave to amend should be denied as futile.

## ARGUMENT

Ford's Motion posited that Plaintiffs' claim for breach of contract should be dismissed because the alleged oral contract lacked definitive terms, violated the Statute of Frauds, and was directly contradicted by the actual writing between the parties. Plaintiffs' arguments and proposed amendment to the Complaint do not overcome those failures.

### A. PLAINTIFFS' OPPOSITION FAILS TO STATE THE EXISTENCE OF AN ACTUAL CONTRACT AND THEREFORE THE CLAIM MUST BE DISMISSED

Plaintiffs' opposition claims that the oral contract related only to Ford's alleged *promise* to exercise its right of first refusal in Plaintiffs' favor, and that the terms of any future agreement to purchase the dealership that Plaintiffs would be assuming are irrelevant. This position, of course, ignores the unambiguous and clear language within Plaintiffs' Amended Complaint and proposed Second Amended Complaint. Specifically, Plaintiffs allege that Ford entered into an alleged verbal contract to exercise a right of first refusal *and* to assign the Purchase and Sale Agreement ("PSA") (see, Exhibit B ¶s10, 16, 17, 30, and 49 and Plaintiffs' Exhibit D Proposed Amended Complaint ¶s 10, 16, 17, 33, and 38).[1]

In making the argument that the *oral* agreement does not really relate to the PSA they would be required to assume, Plaintiffs only accentuate the fact the alleged verbal contract is both missing the essential elements of an agreement, and that any such agreement would be required to be in writing. Specifically, under Plaintiffs' theory, the details of purchase price, timing of the transaction, assignment of assets and liabilities were not material or relevant to the contract. Yet,

---

[1] For example, in no uncertain terms, Plaintiffs alleged, ¶30 "Defendant Ford materially breached the Agreements by, inter alia, failing and/or refusing, on two different occasions, *to exercise its right of first refusal and assign the PSAs to Plaintiffs*. (see Exhibit B ¶30, emphasis added).

under Plaintiffs' argument, they would be bound to purchase the dealership whether the proposed deal was for $1 or $10 million dollars, given they could not acquire the dealership without paying for it. How could Plaintiffs assume the assets and liabilities without knowing what was being assumed? They couldn't, but they simply ignore these significant facts because they know it is a fatal flaw to their Amended Complaint and proposed Second Amended Complaint.

Plaintiffs' allegations simply fall far short of stating a claim upon which relief can be granted, so they now attempt to carve out the alleged *agreement* to assign the PSA, because there was no contract. Plaintiffs cannot provide any terms of the alleged assignment of the PSA, and do not even attempt to do so, because no contract ever existed between Ford and the Plaintiffs. Under the claimed oral agreements as alleged (rather than now argued), Plaintiffs' Amended Complaints fail to meet the requirement of definiteness because other than Plaintiffs' allegations of a verbal agreement to assign, the Complaint is void of any of the critical terms pertaining to the agreement (i.e., sale price of the dealership, timing, assignment of assets, liabilities, alleged transfer of real property, etc.).

It is undisputed that these are not only critical, but essential terms to the alleged agreement to assign the PSA to the Plaintiffs. Rather than attempt to address that fatal flaw, Plaintiffs now attempt to segregate the exercise of the right of first refusal from the assignment of an undefined PSA. Plaintiffs' argument only highlights the fact that this alleged oral contract does not provide what consideration would be exchanged and what specific and actual performance was required by the Plaintiffs.

Plaintiffs' opposition also critically fails to address the four factors developed by the Second Circuit to aid in determining if both parties intended to be bound by an oral contract. For example, the terms of the PSA (i.e., sale price of the dealership, timing, assignment of assets,

liabilities, alleged transfer of real property, etc.) is the type of contract that is not only usually committed to writing, but legally, is required to be committed to writing.

Plaintiffs' attempt to distinguish *Kunica v. St. Jean Fin.*, 1998 U.S. Dist. LEXIS 11867 is misplaced because it relies upon the notion that the Court ignore the specific allegations in the Plaintiffs' Amended Complaint and proposed Second Amended Complaint which state that Ford entered into an alleged verbal contract to exercise a right of first refusal *and* to assign the PSA.[2] Plaintiffs specifically allege that the PSA "concerned not only the sale of the Henderson Dealership, but also the right to purchase, rent, or lease, land or commercial space".[3]

Because Plaintiffs know that such an alleged verbal contract requires that essential terms be stated in a clear definite manner, such that their intentions are ascertainable to a reasonable degree of certainty to bind either party, they simply abandon the plain meaning of the allegations in their Amended Complaint. See *Kunica v. St. Jean Fin.*, 1998 U.S. Dist. LEXIS 11867, *15, *15. Plaintiffs' entire Amended Complaint and proposed Second Amendment is based upon an allegation that Ford agreed, in an *oral* contract, to assign a PSA for the sale of a dealership. Plaintiffs readily admit this alleged oral contract was silent as to sale price, what liabilities were being assumed, and what "right to purchase, rent, or lease, land or commercial space" was being assigned. As argued, such allegations fail as a matter of law and any attempt to amend would be futile.

Plaintiffs' reliance on *Fort Prods. v. Men's Med. Clinic, LLC,* 2016 U.S. Dist. LEXIS 22399 (S.D.N.Y. 2016) and *Puchalski v. FM Constr. Inc.,* 2020 U.S. Dist. LEXIS 213959 (S.D.N.Y. 2020) is equally misplaced. In *Fort Prods.*, plaintiff alleged that the defendant would

---
[2] See Exhibit B ¶s10, 16, 17, 30, and 49 and Plaintiffs' Exhibit D Proposed Amended Complaint ¶s 10, 16, 17, 33, and 38.
[3] See Exhibit B ¶s47 and 49, and Plaintiffs' Exhibit D ¶s 55, and 57.

pay "fair and reasonable value" for the services. In the current case, no reference exists at all as to price or what liabilities the Plaintiffs would be assigned. Similarly, Plaintiffs admit that the only way they can attempt to rely on *Puchalski*, is if they contort the "oral agreement" to not include "the underlying PSA" for the actual sale of the dealership (see Plaintiffs' opposition pg. 12). Plaintiffs' flawed argument purposefully ignores the indisputable fact that the Amended Complaints are devoid of any of the critical terms pertaining to the agreement (i.e., sale price of the dealership, timing, assignment of assets, liabilities, alleged transfer of real property, etc.).

Significantly, the alleged verbal contract is also silent as to the Plaintiffs' actual performance. In an attempt to fix yet another fatal flaw in Plaintiffs' allegations, they propose to file a second Amended Complaint that alleges that Plaintiffs' "consideration" was that Plaintiffs "refrained from contacting Randy Henderson to discuss a proposal by Plaintiffs to purchase his dealership" (see Exhibit D ¶22). This allegation makes little sense and is legally insufficient to successfully oppose Ford's motion because a) Plaintiffs alleged that they *did* contact Randy Henderson in "approximately ten (10) days" and b) Plaintiffs' own allegation in the proposed Second Amended Complaint alleges that Mr. Henderson was no longer selling his dealership (see Exhibit D ¶24). Therefore, if accepted as true, Plaintiffs' allegation implies that Mr. Henderson was not interested in selling his dealership to Plaintiffs.

Other than Van Bortel alleging that she "reiterated Plaintiffs' interest in purchasing the Henderson Ford Dealership…" (see Exhibit B ¶16) the Amended Complaint fails to allege any 'performance by the plaintiff' to support the existence of a purported contract. There are no allegations concerning further steps made in reliance of the perceived contract except the reiteration of an "interest" in purchasing an automobile dealership. Even if true, that allegation falls woefully short of establishing an actual contract between two parties. *See Nick's Garage, Inc.*,

5

*v. Progressive Cas. Ins. Co.,* 875 F.3d. 107, 114 (2d Cir. 2017).

Equally significant is Plaintiffs' erroneous argument that the one document Plaintiffs did sign was limited to a specific alleged "First Ford Agreement" and not the "Second Ford Agreement" (see Plaintiffs' opposition pgs. 8-9). The one documented Plaintiffs did sign stated in no uncertain terms that the Plaintiffs were only being *considered* "as a *Potential* Assignee of Ford Motor Company's Right of First Refusal in regards to the proposed transaction involving Webster Ford, Inc., dba Henderson Ford …" and that "[n]either this letter nor any efforts you may or may not make to pursue such a transaction shall not, in any way, *obligate either party to the above-mentioned transaction."* (see Exhibit C September 1, 2021 signed Correspondence, our emphasis added).

This document makes no reference to an alleged "First Ford Agreement" or "Second Ford Agreement". It simply states that the Plaintiffs were only being *considered* for a ROFR for the Henderson Ford Dealership and that the letter *does not obligate* either party to the referenced transaction. In deciding a motion for judgement on the pleadings, a court may consider the pleadings and exhibits, or documents incorporated by reference. Where a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated by reference into the pleadings the court is not required to accept those allegations. The September 1, 2021, correspondence utterly refutes Plaintiffs' factual allegations and conclusively proves there was no alleged *verbal* contract to exercise a right of first refusal *and* to assign the Purchase and therefore establishes a defense as a matter of law.

In the same factual presentation that serves as the basis for the breach of contract claim, Plaintiffs alleged that the PSA "concerned not only the sale of the Henderson Dealership, but also

the right to purchase, rent, or lease, land or commercial space".[4] Therefore, even if the Court were to infer the existence of a contract, despite the fatal flaws of Plaintiffs' claims as plead, Plaintiffs' purported contract would violate the Statute of Frauds.

> B. **PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED BECAUSE THE ALLEGED CONTRACT IS VOID UNDER THE STATUTE OF FRAUDS AND PLAINTIFFS' ARGUMENT THAT THE PSA WAS NOT PART OF THE ALLEGED VERBAL CONTRACT IS WITHOUT MERIT**

Van Bortel alleges that Ford "…had the 'right of ownership or possession of or the right to sell, rent or lease, land or commercial space" (see Exhibit B ¶ 48-49). Plaintiffs' own allegations invoke the statue of frauds. Specifically, Plaintiffs allege that the sale of the Henderson Ford Dealership "…concerned not only the sale of the Henderson Ford Dealership, but also the right to purchase, rent or lease, land or commercial space" (see Exhibit B ¶47). Under New York's Statute of Frauds, oral contracts, relating to real property that are unaccompanied by a writing memorializing the essential terms of the agreement are void. *See, e.g., Roulley v. Inex Co.*, 677 F.2d 14, 15 (2d Cir. 1982) (statute of frauds applied to loan secured by deed of trust on real estate); *Hanson v. Hanson*, No. 18-cv-695 (KPF), 2019 U.S. Dist. LEXIS 30493, 2019 WL 935127, at *6 (S.D.N.Y. Feb. 26, 2019) (granting motion to dismiss on New York statute of frauds grounds where purported contract involving an interest in real property was not memorialized in a writing).

While a party may assert separate causes of action regardless of consistency, the fatal flaw in Plaintiffs Amended Complaint is not that Plaintiffs allege two separate or inconsistent causes of action. The problem, here, is that both causes of action are based upon *facts*, which if accepted as true for the purpose of this motion, fail to state a claim upon which relief can be granted.

---

[4] See Exhibit B ¶s47 and 49, and Plaintiffs' Exhibit D ¶s 55, and 57.

Specifically, in addition to the fact that Plaintiffs fail to plead the existence of an actual contract, the crux of Plaintiffs' entire complaint, is that there was a verbal promise made that concerned not only the exercise of the right of first refusal, but also the assignment of the PSA which included the "…right to purchase, rent, or lease, land or commercial space." Such an allegation fails in this case because that alleged agreement would violate the Statute of Frauds and should be dismissed.

"Allegations are not well pleaded if they are 'made indefinite or erroneous by other allegations in the same complaint [, or] . . . are contrary to facts of which the Court will take judicial notice." *American Centennial Ins. Co. v. Seguros La Republica, S.A.*, 1996 U.S. Dist. LEXIS 7729. Here, Plaintiffs are not simply seeking alternative theories of liability or damages. Plaintiffs are admittedly asking the Court to accept, as true, conflicting factual allegations that on its face make no sense, renders a claim defective as a matter of law, *and* are directly contradicted by other allegations within the complaint. Specifically, Plaintiffs allege the sale of the Henderson Ford Dealership "…concerned not only the sale of the Henderson Ford Dealership, but also the right to purchase, rent or lease, land or commercial space" (see Exhibit B ¶47). Such an alleged verbal contract violates the Statute of Frauds and must be dismissed with prejudice.

C. **PLAINTIFF VAN BORTEL'S NEW YORK STATE EXECUTIVE LAW § 296(5)(b) CLAIM SHOULD BE DISMISSED BECAUSE VAN BORTEL'S SOLE CONNECTION TO AN ALLEGED DISCRIMINATORY ACT IS PREMISED UPON A CONTRACT THAT CANNOT LEGALLY EXIST AND AN ALLEGED ACT THAT IS NOT DISCRIMINATORY UNDER THE LAW**

Contrary to Plaintiffs' argument in opposition, Plaintiffs' fatally flawed breach of contract claim forms the *only* basis for Plaintiff Mary Catherine Van Bortel's alleged discrimination claim. Based solely upon an alleged verbal agreement for the purchase of a dealership, which according to Plaintiff Van Bortel's complaint, included the transfer of land by Ford, Van Bortel alleges that she was denied the purchase of the dealership because she is a woman.

8

In reality, the one document that is incorporated by reference in Plaintiffs' Amended Complaint is the September 1, 2021 signed correspondence that specifically documented that the Plaintiffs were only being *considered* "as a *Potential* Assignee of Ford Motor Company's Right of First Refusal…" and that "[n]either this letter nor any efforts you may or may not make to pursue such a transaction shall not, in any way, *obligate either party to the above-mentioned transaction"* (see Exhibit C our emphasis added).

Plaintiff Van Bortel's sole factual allegation in support of her discrimination claim is that "on or about October 27, 2021, Van Bortel spoke with Ford's Retail Network U.S. Franchise Manager, Edie Lukas…" and "in the course of their conversation, Van Bortel explained how she had fought to establish herself as a successful female Ford dealer." Allegedly, in response to Plaintiff Van Bortel's statement, Ms. Lukas responded that "…'minority dealers are not a priority right now' for Ford." (See Exhibit B ¶22). Plaintiffs fail to cite to any authority that supports the position that such a vague statement, while disputed, could and would form the basis of alleged discrimination. In fact, in *DiPilato*, the allegation was that the plaintiff was specifically rejected because she was an over-40 female. The allegation in this case that Ford was allegedly not focused on minority dealerships "right now" pales in comparison to the facts in *DiPilato*.

Here, Plaintiffs simply make no allegation that a discriminatory reason was given for the decision not to exercise a ROFR that may have resulted in the transfer of the land on which the Ford dealership is located. Simply put, Plaintiff Van Bortel has not and cannot make any such allegations in this case. Therefore, the New York State Executive Law ¶296(5)(B) cannot apply to the facts as alleged by Plaintiff, her tenuous discrimination claim should fail as a matter of law, and any attempt to amend should be denied as futile. The premise for this entire Amended Complaint is based upon an alleged contract that never existed and could not exist without being

9

in writing. Plaintiff Van Bortel's claim falls for short of the pleading standard and as matter of law should be dismissed.

## CONCLUSION

For all the forgoing reasons, Ford respectfully submits that the Court should dismiss the Amended Complaint with prejudice and without leave to renew.

Dated: New York, New York
March 28, 2022

Respectfully submitted,
AARONSON RAPPAPORT FEINSTEIN
& DEUTSCH, LLP

By: *Peter J. Fazio*
Peter J. Fazio, Esq.
600 Third Avenue
New York, New York 10016
(212) 593-6700

*Counsel for Defendant Ford Motor Company*

To: All Parties VIA ECF